UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD EMANUEL FORBES,

                              Plaintiff,              13-CV-207(MAT)

            v.                                        **DECISION
                                                      and ORDER**

CAROLYN W. COLVIN, Commissioner
of Social Security,

                              Defendant.
_____

## <u>INTRODUCTION</u>

Richard Emmanuel Forbes, ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##10, 12.

## <u>BACKGROUND</u>

Plaintiff filed applications for DIB and SSI on June 11, 2010, alleging he was unable to work beginning October 25, 2007 due to back pain and hernia. T. 124-32, 150. His applications were initially denied, and a hearing was requested before an Administrative Law Judge ("ALJ"). T. 66-81, 82-83. Plaintiff

appeared with his attorney before ALJ William E. Straub in Buffalo, New York, on December 8, 2011. T. 24-55.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since the alleged onset date; (2) he had the severe impairments of degenerative changes of the lumbar spine with low back pain, headaches, and right ankle pain post calcaneal fracture; (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpt. P, Appx. 1, and that he retained the residual functional capacity ("RFC") to perform light work; (4) Plaintiff could not perform any past relevant work; and (5) Plaintiff was not disabled as he was capable of making an adjustment to other work in the national economy. T. 11-19.

The ALJ's unfavorable determination was issued on January 10, 2012, and became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 10, 2013. T. 1-3. This action followed. Dkt.#1.

The Commissioner now moves for judgment on the pleadings asserting that the ALJ's decision was supported by substantial evidence and should be affirmed. Comm'r Mem. (Dkt.#10-1) 10-12.

Plaintiff has filed a cross-motion alleging that the ALJ failed to develop the record regarding Plaintiff's back pain, improperly weighed the opinion of a consultative examiner, and mischaracterized the evidence. Pl. Mem. (Dkt. #12-1) 8-20.

## DISCUSSION

### I.   Scope of Review

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

### II.  Relevant Medical Evidence

#### A.   Treating Sources

In February, 2008, Plaintiff saw his treating physician at Lifetime Health ("Lifetime") for a right inguinal hernia that he had for "some time." T. 214. He stated that he was afraid to have surgery. Id.

He returned to Lifetime in June, 2010 for complaints of back pain. T. 211. He reported that it began two years prior and was of moderate severity and was worsening. Id. He described it as stabbing and persistent. Id. Location was upper and lower back, without radiating pain. Id. Symptoms were relieved by lying down

3

and topical ointment. Examination revealed tenderness in the lumbar spine and no pain with motion. T. 212. Plaintiff was assessed with backache, NOS, chronic, and was prescribed physical therapy and Motrin. Id.

Two months later, Plaintiff returned for a physical examination, which was unremarkable. The doctor noted a history of back pain due to manual labor, and that Plaintiff was going to physical therapy twice per week. T. 205.

In September, 2010, Plaintiff visited Lifetime for dizziness/lightheadedness, aggravated by bike riding and diminished on its own by sitting down. T. 250. He reported associated symptoms of headache, neck stiffness, slurred speech, weakness, and right arm numbness. T. 250. Brain imaging was ordered and reviewed the following month. T. 250, 255. A magnetic resonance imaging ("MRI") test was unremarkable. T. 255.

On March 22, 2011, Plaintiff returned to Lifetime for blood in stool, ringing in right ear, back pain, and tobacco use. T. 275. The doctor assessed a work related injury to lower back. T. 276-77. He was given a prescription to follow up with physical therapy. T. 277-79. Two months later, Plaintiff visited again upon complaints of back pain. T. 285. Physical examination was normal, and Plaintiff was prescribed physical therapy and Ibuprofen. T. 286-87.

4

Plaintiff attended physical therapy on June 20, 2011, where he reported his pain as 9/10. T. 294. On examination, Plaintiff showed limited range of motion and positive straight leg raising. Id.

**B.   Consultative Examinations**

Plaintiff underwent a consultative internal medicine examination on August 31, 2010 by Nikita Dave, M.D. T. 219. He stated that he took Advil for his back pain and that physical therapy helped. Id. He rated his pain at 4/10. Id. He had not had any imaging done and did not have a specialist. Id. Plaintiff also complained of intermittent headaches, and noted a diagnoses of inguinal hernia from previous years, but he chose not to pursue surgery. Id.

With regard to his daily activities, Plaintiff cooked, cleaned, did laundry, shopped, and performed self-care. T. 220.

Plaintiff's physical examination was normal, except for pain in the lumbar spine at the end range of motion, slightly exaggerated tenderness, palpated at L4-5 midline and right lumbar paraspinal at L5-S1. T. 222. An x-ray of the cervical spine revealed mild disc thinning at C5-6, and an x-ray of the lumbar spine showed disc thinning with sclerotic changes of the endplate at L5-S1. T. 222, 225, 226. The consultative examiner diagnosed Plaintiff with chronic axial low back pain with fair prognosis. T. 223. She opined that Plaintiff may not be able to work in outdoor climates, climb ladders, or lift/carry while on uneven

surfaces. T. 223. He would have mild to moderate limitations in prolonged sitting/standing/walking, running, jumping, and lifting/carrying/pushing/pulling greater than moderately weighted objects. Id.

III. **Non-Medical Evidence**

Plaintiff was 43 years-old at the time of his hearing, had an eighth-grade education and general equivalency diploma, and received some vocational training in electrical wiring and maintenance. T. 29-30. He had held a variety of jobs in demolition, construction, factory work, janitorial, and security. T. 31-32.

At the hearing, Plaintiff testified that although he could likely perform a "light janitorial" job, he could not do so on a full-time basis. T. 34, 44. He characterized his back pain as "very intense" that lasted all day, almost every day, and it radiated to his legs. T. 37, 46. The pain had gotten worse over time. T. 37. He had pain between his shoulder blades and had trouble reaching. Id.

Plaintiff's treatment included physical therapy, Tylenol, and muscle relaxers. T. 34, 36. He told the ALJ that lying down was the best therapy for him, and that sitting in a hot tub helped relieve his pain. T. 49.

Plaintiff also testified to having a hernia with associated pain, and he felt that he had symptoms of anxiety and depression, but had never seen a psychiatrist or been treated for it. T. 40.

**IV.   The decision of the Commissioner was supported by substantial evidence.**

   **A.   Development of the Record**

Plaintiff first contends that the ALJ's failure to develop the administrative record resulted in an erroneous residual functional capacity determination that was not supported by substantial evidence. Pl. Mem. 8. Specifically, he argues that the ALJ: (1) did not attempt to obtain additional physical therapy records; (2) did not obtain a statement from Plaintiff's treating physical regarding his functional abilities and limitations; and (3) failed to order an additional consultative examination. Pl. Mem. 8-14.

Both the ALJ and the claimant have obligations in assembling the record. The claimant has the burden of producing evidence: "[The claimant] must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s)." 20 C.F.R. § 416.912(a). The ALJ must affirmatively develop the record: "Even when a claimant is represented by counsel ... the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).

At the hearing, the ALJ asked Plaintiff's counsel about the specific records in question, and counsel responded that the

7

facility had "searched their archives, their basement," and they could not "find anything." T. 51. An ALJ need not seek additional evidence from a medical source if he knows that "the source either cannot or will not provide the necessary evidence." 20 C.F.R. § 404.1520b(c)(1).

In any event, the record in this case included an otherwise complete medical history with treatment notes and test results from treating and consultative sources. The ALJ's observation that Plaintiff's treatment for low back pain was "sporadic" remains correct—he treated with his primary physician a handful of times in two years, and did not complain of back pain in February, 2008. T. 203-14. Plaintiff had not consulted with an orthopedist, neurosurgeon, or other specialist. T. 16. He was treated with Motrin and physical therapy, and examination results were generally normal. Id. The physical therapy progress notes from 2011 indicated that Plaintiff was "doing well" at most sessions. T. 293-96. Thus, even if Plaintiff's physical therapy records from the previous year were available, it is unlikely that these additional records would have affected the ALJ's decision, and any error in this regard would be considered harmless. See Yeomas v. Colvin, No. 13-CV-6276, 2015 WL 1021796 (W.D.N.Y. Mar. 10, 2015) (ALJ's failure to obtain treatment records was harmless error where there was doubt as to whether the records existed); see also Contreras v. Comm'r of Soc. Sec., No. 13-CV-6474, 2014 WL 5149111 (S.D.N.Y. Oct. 14, 2014)

("[I]n light of the consistent evidence in the record and the extremely low likelihood that these . . . records would have changed or significantly affected the ALJ's decision, it is not clear that the ALJ committed legal error by not seeking them.")

For these reasons, the Court finds that no legal error arose out of the ALJ's purported failure to request the physical therapy records from 2010.

Also contrary to Plaintiff's contention, the absence of a function-by-function analysis of a treating source did not render the record incomplete, as explicitly provided by the regulations: "[m]edical reports <u>should</u> include . . . [a] statement about what you can still do despite your impairment . . . the lack of the medical source statement will not make the report incomplete." 20 C.F.R. § 404.1513(b)(6)(emphasis added). Pl. Mem. 10.

The ALJ found that Plaintiff retained the residual functional capacity to perform light work, which is defined as lifting no more than 20 pounds, with frequent lifting or carrying of objects of up to 10 pounds, and involves a good deal of walking or standing or sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). In reaching this determination, the ALJ considered Plaintiff's "sporadic" treatment, conservative treatment regimen of anti-inflammatory medication and physical therapy, the lack of evidence demonstrating stenosis or other significant spinal abnormality, the physical examination

results, and Plaintiff's activities of daily living. T. 15-17. Notably, Plaintiff exhibited normal gait, full range of motion of the lumbar spine, and negative straight leg raising during his consultative examination. T. 17. Likewise, an examination by his treating physician was essentially unremarkable. T. 286.

The ALJ also afforded the consultative examiner's opinion that Plaintiff had mild to moderate limitations in sitting, standing, walking, running, jumping, and lifting, carrying, pushing, and pulling greater than moderately weighted objects "some weight" as it was inconsistent with Plaintiff's admitted activities. T. 18, 223. Plaintiff testified that he stopped working because his job ended, not due to his medical condition, and described his work history as "inconsistent." T. 17. As discussed in further detail throughout the remainder of this Decision and Order, the ALJ's residual functional capacity assessment was supported by substantial evidence, and the absence of formal opinion from Plaintiff's treating physician does not require remand. See Tankisi v. Comm'r of Soc. Sec., 521 Fed.Appx. 29 (2d Cir. 2013) ("remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.")(citations omitted); accord Hogan v. Colvin, No. 12-CV-1093, 2015 WL 667906, at *5-6 (W.D.N.Y. Feb. 17, 2015)(no duty to request opinion from treating source where reports

of consultative examiner, expert testimony, and clinical findings by treating physicians were consistent with one another).

The ALJ was also not required to order additional testing, such as an MRI or discogram of the lower back. Pl. Mem. 12.

The Second Circuit case Firpo v. Chater is analogous to the present case in which the court found that additional testing was not required where the balance of the evidence supported a finding of no disability:

> Nothing in the regulations supports Firpo's contention that the ALJ was required to order an orthopedic exam or a CT scan. SSA is not an HMO, and the regulations do not undertake to afford claimants the best available diagnostic services, or treatment. The burden is on a claimant to provide all relevant medical evidence, and the ALJ is to order a consultative exam only when this information is not "sufficient" to make a decision. And even if a consultative exam is ordered, nothing in the regulations suggests that in every case the consultative doctor must be a specialist. Here, the evidence from the SSA consultative exam was consistent with the conclusion from Dr. Abreu (Firpo's own doctor) that her disability was not severe enough to prevent her from working.

100 F.3d 943, 1996 WL 49258, at *2 (2d Cir. 1996) (table). Thus, while an ALJ has a duty to develop the administrative record, it cannot be said that in the instant case, there was insufficient evidence in the present record to determine whether Plaintiff was disabled. Although Dr. Dave noted that Plaintiff did not have recent imaging done and did not have a specialist, she reviewed the x-ray results from the same day, which revealed mild disc changes

11

in the cervical and lumbar spines. Relying upon the x-rays and her examination, she formed her opinion as to Plaintiff's residual functional capacity. T. 222-23. This is not a case, as Plaintiff suggests, where there had been no diagnostic testing completed or that such testing was too remote in time to enable the ALJ to make a proper determination. See Parker v. Callahan, 31 F.Supp.2d 74, 78 n.10 (D.Conn. 1998)("Courts have required ALJs to order x-rays to ensure development of a full and fair administrative record, but only when x-rays are entirely absent or have not been taken for a long period of time.") (collecting cases).

Accordingly, the ALJ in this case had no duty to further develop the record regarding Plaintiff's back impairment as there were no obvious evidentiary gaps, and the record presented a complete medical history. Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996).

**B.    Consultative Examiner Opinion**

Plaintiff next argues that the ALJ erred in considering the opinion of the consultative examiner because her findings were "so vague as to make them useless." Pl. Mem. 14.

In Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superceded by regulation on other grounds by, 20 C.F.R. § 404.1560(c)(2), the Second Circuit found that a medical opinion was too vague to permit the ALJ to determine whether the claimant could perform sedentary work where the only evidence supporting the

12

ALJ's RFC determination was the opinion of one doctor who reported, without additional information, that "plaintiff's impairment is: lifting and carrying moderate; standing and walking, pushing and pulling and sitting mild." <u>Curry</u>, 209 F.3d at 123.

Here, Dr. Dave specifically opined that Plaintiff had mild to moderate limitations in prolonged sitting/standing/walking, and assessed limitations in lifting/carrying/pushing/pulling greater than moderately weighted objects with regard to his lumbar spine impairment. T. 223.  This, in addition to other objective evidence in the record, supported the ALJ's determination. The ALJ discussed Plaintiff's treatment history and detailed the results of Dr. Dave's physical examination. T. 16-18. He also noted that Dr. Dave reported that Plaintiff had a normal gait and stance, was able to walk on his heels and toes without difficulty, needed no assistance with changing or getting on or off the examination table, and was able to rise from a chair without difficulty. T. 17. The ALJ further pointed out that Dr. Dave did not observe body system abnormalities aside from slightly exaggerated responses to tenderness testing, and Plaintiff had full strength and range of motion in the lumbar spine, with some pain at the end of the range. <u>Id.</u> The ALJ also noted that Dr. Dave observed negative straight leg testing. <u>Id.</u> Dr. Dave did not observe any neurological deficits, and Plaintiff's joints were stable and nontender. <u>Id.</u> The ALJ then assigned "some weight" to Dr. Dave's opinion, on the basis that

13

Plaintiff's admitted daily activities contradicted to some extent the restrictive limitations assessed. T. 18.  Thus, unlike in Curry, Dr. Dave's conclusion coupled with the other medical evidence were sufficient to support the inference that Plaintiff could perform work at the light exertional level. See Tankisi, 521 Fed. Appx. at 34 (rejecting challenge to consulting physician's opinion as "incomplete and vague" where physician provided additional clarifying information and there was other medical evidence to support the ALJ's finding).

The Court finds that the ALJ properly assessed the opinion of the consultative examiner and that his residual functional capacity determination was supported by substantial evidence in the record.

### C.   Consideration of the Evidence

Plaintiff also argues that the ALJ mischaracterized his testimony and the medical evidence in reaching the residual functional capacity determination. Pl. Mem. 15-20.

It is well-settled that an ALJ cannot "cherry pick" only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence. See, e.g., Royal v. Astrue, No. 11-CV-456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, inter alia, Fiorello v. Heckler, 725 F.2d 174, 175-76 (2d Cir. 1983)).

14

Plaintiff states that he "testified to a great many problems taking care of his needs and with his activities of daily living." Pl. Mem. 16. It is true that in both the Function Report and his hearing testimony, Plaintiff reported upper back pain when cutting his hair, discomfort when using the bathroom, and an inability to stand on one foot. T. 157-58. He also had trouble reaching, needed to take frequent breaks from household chores and work, and could walk for about three blocks and sit comfortably for about 30 minutes. T. 34-50. However, the ALJ reasonably concluded that these activities were consistent with the ability to perform light work, as Plaintiff also reported frequently riding a bicycle, completing household chores such as washing dishes, cooking, cleaning, doing laundry, shopping, and performing self-care. T. 17, 158-59, 220. The ALJ relied upon Plaintiff's statements to examining physicians, the clinical findings, and the hearing testimony in reaching his conclusion. T. 14, 17.

Moreover, the ALJ properly noted that Plaintiff was able to sit for the duration of the hearing without changing position. T. 17. See, e.g., Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998)(observations of claimant's physical demeanor should be assigned only "limited weight" in social security disability case, but there is no per se legal error where ALJ considers physical demeanor as one of several factors in evaluating credibility). Moreover, the ALJ properly found that Plaintiff's subjective

complaints not fully credible on the basis of his admitted daily activities, poor work history, the objective medical evidence, lack of significant medical treatment for his impairments, lack of consultation by specialists, and the credible opinion evidence. T. 17-18. Given the ample record evidence, the ALJ reasonably concluded that Plaintiff's symptoms did not preclude substantial gainful activity. See Prince v. Astrue, 490 Fed. Appx. 399, 400 (2d Cir. 2013) ("While Prince definitely reported pain, in both his testimony and some supporting medical documents, 'disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'")(quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983)).

Plaintiff also asserts that the ALJ erred in noting Plaintiff's negative straight leg raising tests. Pl. Mem. 19, T. 16-17. However, consultative examiner Dr. Dave noted this finding in her report. T. 222. Even assuming Plaintiff's reading of the handwritten physical therapy notes from 2011 indicating positive straight leg raising is correct, it is well-settled that an ALJ is not required to discuss every piece of evidence in his decision, see Brault v. Comm'r of Soc. Sec., 683 F.3d 443, 448 (2d Cir. 2012); and it is for the Commissioner, not the court, to weigh conflicting evidence in the record. See Veino v. Barnhart,

312 F.3d 578, 588 (2d Cir. 2002). The ALJ thoroughly considered the medical records, and straight leg raise testing was but one example contained in the ALJ's larger discussion of Plaintiff's generally unremarkable examination findings. T. 13-18. Moreover, there is no evidence of positive straight leg raise tests prior to 2011, despite an alleged onset date of October, 2007, nor does he cite to any evidence indicating that the positive findings establish an inability to perform light work. Pl. Mem. 10, 19-20. Indeed, the ALJ acknowledged that Plaintiff suffered lower back pain, but the objective medical evidence and other evidence in the record was consistent with the residual functional capacity assessment. T. 16-18.

Plaintiff's remaining arguments regarding the ALJ's purported mischaracterization of the evidence fail for the same reasons stated above. Pl. Mem. 19-20. The Court reminds Plaintiff that a reviewing court "may only set aside a determination which is based upon legal error or not supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Here, substantial evidence in the record supported the ALJ's detailed decision, including his discussion of the medical evidence and Plaintiff's daily activities.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.#10) is granted, and Plaintiff's

cross-motion (Dkt.#12) is denied, and the complaint is dismissed in
its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 20, 2015